48 CCPA

**Application of Everett C. HUNTER.**
**Patent Appeal No. 6632.**

United States Court of Customs
and Patent Appeals.
Feb. 6, 1961.

Archworth Martin, Pittsburgh, for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 13–16 in application serial No. 427,213, filed May 3, 1954, for "Reinforcement Fabric for Concrete Structures." No claims were allowed.

The invention relates to reinforcement fabrics useful in laying concrete floors. Additional uses are said to be as the base for plastered walls and ceilings or for exterior stucco walls. Such reinforcement fabrics may include a backing sheet, usually made of moisture proof paper, and a wire mesh spaced from the backing sheet, the backing sheet serving as a form or mold and the wire mesh reinforcing the concrete or like material. Hook-shaped wires known as stitching elements connect the wire mesh to the backing sheet.

Applicant loosely connects adjacent, longitudinally-disposed, stitching elements by using lacing members which are located on the rear side of the backing sheet, the side opposite that which is in contact with the concrete. These lacing members, which are actually extensions of the stitching elements, support the backing sheet and maintain the stitching elements in fixed relative positions.

Claim 15 is exemplary and reads:

"Fabric structure comprising a mesh for the reinforcement of cementitious material, a flexible backing sheet therefor, lacing members disposed rearwardly of the backing sheet and extending in generally longitudinal alinement, each lacing member being of short length relative to the length of the fabric, and having a yoke-like bend formed thereon at one end, with one leg of the yoke extending outwardly through the backing sheet and the curved portion of the yoke-like bend being in loosely-hooked engagement with the mesh and serving as a stitching element, the other leg of the bend being backwardly turned and terminating at the outer face of the backing sheet, the other end of each lacing member being loosely connected to the adjacent

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

lacing member, the lacing members having limited relative pivotal movements at their points of connection, about axes parallel to their longitudinal axes, and also having pivotal movements about axes transverse thereto, but limited in one direction by the said back turned legs."

The improvement appellant is seeking to patent is (1) to loosely connect adjacent stitching elements by sectionalizing the lacing wires and (2) to loosely mount the stitching elements with respect to the backing sheet and the wire mesh. He asserts that these structural modifications provide a flexible unitary backing and mesh which can be manufactured and then rolled up to facilitate handling and shipping as well as providing certain advantages in installation. During the rolling up of the fabric, these loose connections allow the stitching elements to tilt, preventing, or at least reducing, the possibility of the stitching elements punching holes in the backing sheet of the adjacent layer of the roll.

More particularly the flexible fabric has stitching elements one end of each of which hooks loosely over a mesh wire, terminating at the exposed face of the backing sheet. The other end of the stitching element extends through the backing sheet, bends ninety degrees to lie flat against the sheet, then extends along the rear of the sheet, terminating in a loosely hooked or looped engagement with the ninety degree bend of an adjacent stitching element. The hooked or looped engagement is facilitated by forming a loop in the end of the lacing member and, if desired, the ninety degree bend in the stitching element may also be formed into an eye.

The examiner and the board relied on various combinations of five references which are:

| | | | | |
|---|---|---|---|---|
| Waite | 883,434 | March | 31, | 1908 |
| Hedden | 1,694,542 | December | 11, | 1928 |
| Land | 1,827,945 | October | 20, | 1931 |
| McNabb | 2,164,464 | July | 4, | 1939 |
| Nelsson | 2,661,515 | December | 8, | 1953 |

Land is the basic reference. It discloses a unitary fabric having a backing sheet and reinforcement mesh, the mesh being positively held in spaced relationship to the backing by clips which in appearance somewhat resemble cotter-pins. The drawing discloses that an eye formed in each clip surrounds a wire of the mesh, a long leg of the clip extending through and bent back against the backing, while a short leg of the clip does not extend through the backing but merely terminates at the face thereof thus "providing positive spacing means" between the backing and the mesh. The specification also suggests welding the mesh to supporting clips as a means for preventing relative movement of the mesh with respect to the backing. In other embodiments Land embeds or depresses the end of at least one leg of the clip into "stiffening strips" which have the thickness of ordinary laths, to increase rigidity of the structure.

Hedden shows a combination paper backing and mesh reinforcement fabric, the mesh being expanded metal. He uses figure–8 shaped supporting clips, the upper loop encircling a mesh wire and a portion of the lower loop extending through the paper backing. Straight wires located behind the backing pass through the lower portions of a series of aligned clips, loosely holding them in place. With this clip and lacing wire construction, the fabric may be assembled, the mesh may be collapsed against the backing, thus facilitating handling and shipping, and the proper spacing between mesh and backing may be maintained during installation.

Waite is directed to concrete flooring construction and uses forms or molds, apparently rigid, made of metal or wood, and reusable, which are supported by hangers hooked over supporting channel-iron bars, the bars in turn being supported by flanges on I-beam floor supports. In the disclosure relied on, the hanger extends through the forms, is bent at right angles, extends to and is bent around an adjacent hanger. Waite

says that the prior art, in order to hook the ends of two adjacent hangers over a single channel iron, required a large undesirable gap or hole in the form. To eliminate this gap, Waite, in one embodiment, shows "a small hook * * * adapted to overlie and rest upon the adjacent hangers just behind the upwardly turned end portion." Only one hook of one hanger, which also provides vertical support for an adjacent hanger, passes through the form and the larger objectionable gap is thus greatly reduced.

In McNabb variously shaped clips are shown for securing "paper-back wire fabric lath" to furring strips or similar supports. Each wire clip includes, on one end, a hook which is adapted to hook around the furring support, an elongated center portion to extend along the outside or exposed face of the fabric, and, on the other end, an eye through which is passed the hook of an adjacent clip. One hook thereby provides support for opposite ends of adjacent clips. The eye end of each clip has a leg which catches in the fabric, temporarily holding the clip in place until the hook of the next clip is passed through the eye and secured to the furring strip. One installing the fabric may, therefore, hold it with one hand while, with the other hand, securing the fabric to the furring strips by interlocking a string of clips. The patent describes this string of clips as a "chain across the face of the fabric * * * [providing] a continuous support for the fabric from end to end."

Nelsson is much the same as McNabb, the supporting clips being of various shapes but each having in common a hook that embraces a support member, a central supporting portion which extends along the exposed face of a lath panel, and a hook-and-eye arrangement for connecting adjacent clips. The eyes, and in some embodiments parts of the supporting portion, protrude so as to tie the plaster more securely to the lath panel.

The board affirmed the rejection of all claims "on Land Figure 5 in view of Hedden and either Waite, McNabb or Nelsson." Hedden was said to teach that where it is not desirable to have rigid spacing of the mesh from the backing, as in Land, Figure 5, "the solution is to have the stitching elements only loosely embrace the mesh wires." As to the bent back stitching element and the loose interconnection with an adjacent stitching element, the board said:

"Obviously, Land's stitching elements with their lower bent ends 12 serve to space and support the backing from the mesh in the same manner as appellant's corresponding elements 12 do, and as the clips or hangers of Waite, McNabb or Nelsson space and suspend their respective form plates, reinforcing fabric or lath panels from suitable supporting surfaces. In these patents, the lower ends of the hangers are interconnected to form a jointed lacing beneath the supported elements in substantially the same manner as in this case, even though the clips and supported elements are not intended to be rolled for shipping purposes. Where it is desired to have the stitching elements of Land directly contact and support more of the backing, we consider it would be an obvious expedient to lengthen bent ends 12 of said elements and provide them with hooks or eyes which cooperate with adjacent elements to form a jointed lacing in the manner shown in Waite, McNabb or Nelsson. Such a change would leave the Land Figure 5 structure capable of being rolled up in the same manner as at present shown therein."

In addition to asserting the correctness of the board's rejection, the Patent Office Solicitor contends that appellant's specification contains an admission of the prior art which is allegedly the best "reference" in the record. That portion of the specification referred to reads:

"Reinforcement fabric of the character referred to commonly comprises a reinforcement mesh of wires

welded together in relatively crossed relation, together with a backing sheet therefor held in place by lacing wires disposed rearwardly of the backing sheet and connected through the backing sheet to the mesh by stitching elements in the form of bent wires or hooks."

At the outset we will dispose of this alleged admission, which was first raised, insofar as the record shows, in the solicitor's brief on appeal. It is not, in our opinion, an unequivocal admission of the prior art and to now hold that it is, as a basis for affirming the board's rejection, would be a new ground, not passed on by the board. More important, however, as a matter of substance, we note that the alleged admission (as stated in the solicitor's brief), "fabrics including a welded wire reinforcement mesh, a backing sheet and lacing wires connected through the backing sheet to the mesh by stitching wires," admits to no more than is disclosed by Hedden. His expanded metal is equivalent to a "mesh of wires welded together" and his straight wires ("lacing wires") are connected through the backing sheet to the mesh by figure–8 shaped clips ("stitching elements").

The sole issue, therefore, is whether the board was correct in holding the claims to be unpatentable over the prior art references.

The solicitor admits novelty in the claimed subject matter in two respects over the principal reference, Figure 5 of Land. First, Land's stitching elements are not loosely connected over a cross wire of the mesh and, second, the rearwardly-located, bent-over end of the clips does not extend to, or loosely connect with, an adjacent stitching element. He argues that these admitted differences would, however, be but obvious modifications to one having ordinary skill in the art, relying on the board's reasoning. We do not agree.

Admittedly White, Nelsson and McNabb disclose clips having shapes similar to those recited in the claims.

But when one attempts to read these references without the benefit of the appellant's disclosure, it is not apparent to us how one of ordinary skill in this art would obviously modify Figure 5 of Land by using loosely-hooked lacing members for linking together adjacent stitching elements which have a particular shape as well as certain claimed relationships to the mesh on the backing sheet of a reinforcement fabric. Clearly the clips of McNabb and Nelsson are used for purposes distinct from and in addition to those performed by appellant's single piece stitching and lacing members. The clips of these references could, of course, be used to secure appellant's reinforcement fabric to floor or wall supports. When so used, however, the "lacing" portion would engage the exposed face of the fabric, the hooks would extend away from the mesh in the direction of the floor or wall supports, and would be hooked over or otherwise secured to the supports and not to the reinforcing mesh. Waite is equally deficient, the clips or hangers being used to give vertical support to rigid reusable forms from channel-iron supports and in no way suggesting appellant's linked lacing members in the claimed reinforcement fabric. The fact that the channel-iron may serve as reinforcement for the concrete in addition to supporting the weight of the forms and concrete does not cure this deficiency. We think the board improperly used the disclosures of Waite, McNabb and Nelsson so as to modify Land's Figure 5 and, in the words of the board, produce a "structure capable of being rolled up in the same manner as at present shown."

We agree with appellant that "the closest reference" is Hedden, but we are still of the opinion that neither Waite, nor McNabb, nor Nelsson contains sufficient teachings to render obvious to one having ordinary skill in the art at the time the invention was made appellant's claimed combination including a one piece lacing and stitching element which is in loosely hooked engagement with

the mesh and with an adjacent element, providing a flexible, rollable reinforcement fabric.

For the reasons stated, the board's decision affirming the rejection of claims 13–16 is reversed.

Reversed.